PER CURIAM.
Appellant Taitón McQuitter challenges the denial of a post-conviction motion filed pursuant to Florida Rule of Criminal Procedure 3.850. Following an evidentiary hearing, the trial court denied relief stating that it could not “conclude that the failure to present these witnesses’ testimony would have changed the outcome or the verdict in this case.” Because it is not clear whether the court correctly applied the prejudice standard of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), we remand for further proceedings.
McQuitter was convicted after jury trial of aggravated battery with a firearm and shooting into a vehicle. Pursuant to an agreement between the state and McQuit-ter, through which he waived his right to appeal, the trial court sentenced McQuitter to concurrent fifteen-year terms.
At issue is McQuitter’s collateral claim that counsel was ineffective in failing to investigate and call at trial two alibi witnesses who would have testified that he was with them at a mutual friend’s house during the time of the crime. The alibi witnesses testified at the evidentiary hear *279 ing. The State called the friend/host to rebut the testimony of the alibi witnesses.
The crime occurred near 9:30 p.m. The victim was shot while driving his car down a street, after being told to slow down. The victim identified McQuitter with varying percentages of certainty ranging from 60-70% three days after the offense upon viewing a photo array, and then 80%-100% at trial. An eyewitness, who along with McQuitter had lived on the street of the crime for many years, initially told the police that McQuitter was the shooter. At trial the eyewitness testified that McQuit-ter was at the scene. The eyewitness acknowledged that he had previously identified McQuitter as the shooter, but testified at trial that at the time the shot was fired, he had turned to speak with a group of men and did not see who fired the shot.
At the hearing on the Rule 3.850 motion, the two alibi witnesses testified to the gathering beginning near 7:00 p.m. or 8:00 p.m. and lasting through 11:00 p.m. or midnight. They testified that upon McQuitter’s arrest they spoke with McQuitter’s father, and advised him that McQuitter was with them that night. McQuitter’s father testified that he relayed this information to defense counsel, and recalled obtaining the alibi witness information from his son, not the witnesses.
As noted, the state offered the testimony of the host. She recalled that McQuit-ter called sometime after 10:00 p.m. and asked to be picked up. The host was certain that McQuitter was not at the home before 10:00 p.m. She was 18 years old at the time and was not allowed to have boys at her parent’s house. The group snuck McQuitter onto the patio where they were playing cards while her parents were sleeping. There seemed to be no dispute that the crime occurred in a location close to the host’s home, about a five-minute drive or three miles. McQuit-ter, the alibi witnesses, and the host were friends with one another and with McQuit-ter’s girlfriend who was not present that night. At least one of the alibi witnesses remains a close friend and co-worker of McQuitter’s girlfriend.
Defense counsel testified that he knew before trial that the eyewitness was recanting his previous identification of McQuitter as the shooter, though he still placed McQuitter at the scene. Counsel testified further that he was aware of the alibi witnesses, that he failed to investigate them, that this was not a strategic decision, and that their testimony would not have been inconsistent with the defense presented.
The court questioned why the women, who were long-time friends of McQuitter and his girlfriend, had not contacted McQuitter’s attorney before the trial or immediately upon hearing about his conviction. One witness seemed to think that her information would be presented to the court through McQuitter’s father and maintained that she was unaware that McQuitter had a court date.
The judge found that counsel was deficient but determined that it could not conclude that the “failure to present the witnesses’ testimony would have changed the outcome or verdict in this case.”
Ineffective assistance of counsel requires the defendant to prove two requirements:
First, the defendant must show that counsel’s performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the “counsel” guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel’s errors were so serious as to *280 deprive the defendant of a fair trial, a trial whose result is reliable.
Strickland v. Washington, 466 U.S. at 687, 104 S.Ct. 2052. The first prong is established by showing that “counsel’s representation fell below an objective standard of reasonableness” under “prevailing professional norms.” Id. at 688. This requirement is not at issue on appeal.
The second prong is established by showing that “there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Strickland, 466 U.S. at 694,104 S.Ct. 2052. The movant must show something more than a possibility “that the errors had some conceivable effect on the outcome of the proceeding.” Id. at 693.
The Supreme Court of the United States recently clarified the Strickland prejudice standard in Harrington v. Richter, — U.S. -, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011).
In assessing prejudice under Strickland, the question is not whether a court can be certain counsel’s performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See Wong v. Belmontes, 558 U.S. 15, -, 130 S.Ct. 383, 390, 175 L.Ed.2d 328 (2009) (per curiam) (slip op., at 13); Strickland, 466 U.S., at 693, 104 S.Ct. 2052, 80 L.Ed.2d 674. Instead, Strickland asks whether it is “reasonably likely” the result would have been different. Id., at 696, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. This does not require a showing that counsel’s actions “more likely than not altered the outcome,” but the difference between Strickland’s prejudice standard and a more-probable-than-not standard is slight and matters “only in the rarest case.” Id., at 693, 697, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. The likelihood of a different result must be substantial, not just conceivable. Id., at 693, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.
Richter, 131 S.Ct. at 791-92.
The judge in the written order denied the motion because he could not conclude that testimony from the alibi witnesses “would have changed the outcome or verdict in this case.” At the hearing, the judge indicated several times that he did not believe that the testimony would “necessarily change the outcome of the case.” Strickland prejudice, however, does not require the reviewing court to conclude with certainty that the outcome “would have” differed. The question is whether the defendant has established a “substantial likelihood” of a different result such that confidence in the outcome is undermined.
We cannot conclude that the trial court applied the correct standard, and therefore, reverse and remand for further proceedings consistent with this opinion. In the order entered on remand, the trial court shall set forth findings of fact and conclusions of law as required by the rule. Fla. R.Crim. P. 3.850(d); Thomas v. State, 954 So.2d 56, 57 (Fla. 1st DCA 2007). This decision should not be taken, one way or the other, as an indication of the court’s view of the merits of the claim.

Reversed and remanded with instructions.

STEVENSON and HAZOURI, JJ., concur.
CONNER, J., dissents with opinion.